## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| APEX IMPACT MARKETING, INC. d/b/a FOCUSMX, )<br><br>Plaintiff/Counterclaim )<br>Defendant, )<br><br>-against- )<br><br>PUNCH INNOVATIONS, LLC and THOMAS CONTI, )<br><br>Defendants/Counterclaim )<br>Plaintiffs and Third Party )<br>Plaintiffs, )<br><br>-against- )<br><br>DAVE MOORE )<br><br>Third Party Defendant. ) | 2:17-CV-02243-NIQA<br><br>**ANSWER,<br>DEFENSES,<br>COUNTERCLAIMS<br>AND THIRD PARTY<br>CLAIMS**<br><br>**JURY TRIAL<br>DEMANDED** |

### ANSWER TO PLAINTIFFS' COMPLAINT AND DEFENSES

Defendants Punch Innovations, LLC and Thomas Conti (collectively, "Defendants" or "Counterclaim Plaintiffs"), by and through their undersigned attorneys, for their Answer and Defenses to the Complaint, hereby allege as follows:

### AS TO "PARTIES"

1.      Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 1 of the Complaint.

2.      Admit the allegations contained in Paragraph 2 of the Complaint.

3.      Admit the allegations contained in Paragraph 3 of the Complaint.

## AS TO "JURISDICTION"

4.    No response is required to the allegations contained in Paragraph 4 of the Complaint as they call for a legal conclusion.  To the extent a response is required, deny the allegations.

## AS TO "VENUE"

5.    No response is required to the allegations contained in Paragraph 5 of the Complaint as they call for a legal conclusion.  To the extent a response is required, deny the allegations.

## AS TO "BACKGROUND"

6.    Deny the allegations contained in Paragraph 6 of the Complaint.

7.    Deny the allegations contained in Paragraph 7 of the Complaint.

8.    Deny the allegations contained in Paragraph 8 of the Complaint.

9.    Deny the allegations contained in Paragraph 9 of the Complaint.

10.    Deny the allegations of Paragraph 10 of the Complaint except admit that Plaintiff demands payment of monies it was not owed.

## AS TO "COUNT I (BREACH OF CONTRACT – PUNCH)"

11.    Repeat and reallege their responses to all paragraphs above as if fully contained herein.

12.    Deny the allegations contained in Paragraph 12 of the Complaint.

13.    Deny the allegations contained in Paragraph 13 of the Complaint.

14.    Deny the allegations contained in Paragraph 14 of the Complaint and the allegations contained in the "Wherefore" clause and aver that Plaintiff is not entitled to any of the relief requested or any other relief.

## AS TO "COUNT II (OPEN ACCOUNT – PUNCH)"

15.     Repeat and reallege their responses to all paragraphs above as if fully contained herein.

16.     Deny the allegations contained in Paragraph 16 of the Complaint.

17.     Deny the allegations contained in Paragraph 17 of the Complaint.

18.     Deny the allegations contained in Paragraph 18 of the Complaint and the allegations contained in the "Wherefore" clause and aver that Plaintiff is not entitled to any of the relief requested or any other relief.

## AS TO "COUNT III (UNJUST ENRICHMENT - PUNCH)"

19.     Repeat and reallege their responses to all paragraphs above as if fully contained herein.

20.     Deny the allegations contained in Paragraph 20 of the Complaint.

21.     Deny the allegations contained in Paragraph 21 of the Complaint.

22.     Deny the allegations contained in Paragraph 22 of the Complaint.

23.     Deny the allegations contained in Paragraph 23 of the Complaint and the allegations contained in the "Wherefore" clause and aver that Plaintiff is not entitled to any of the relief requested or any other relief.

## AS TO "COUNT IV (BREACH OF CONTRACT - CONTI)"

24.     Repeat and reallege their responses to all paragraphs above as if fully contained herein.

25.     Deny the allegations contained in Paragraph 25 of the Complaint.

26.     Deny the allegations contained in Paragraph 26 of the Complaint and aver that such allegations are frivolous, baseless, and intended solely to harass and intimidate Defendant

Tom Conti.  The extraordinary remedy of piercing the corporate veil is unwarranted given the nature of this case.

27.     Deny the allegations contained in Paragraph 27 of the Complaint and aver that such allegations are frivolous, baseless, and intended solely to harass and intimidate Defendant Tom Conti.  The extraordinary remedy of piercing the corporate veil is unwarranted given the nature of this case.

28.     Deny the allegations contained in Paragraph 28 of the Complaint and the allegations contained in the "Wherefore" clause and aver that Plaintiff is not entitled to any of the relief requested or any other relief.

## DEFENSES

### FIRST DEFENSE

29.     Plaintiff's Complaint -- and each of the Counts -- fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

30.     To the extent an enforceable contract is alleged, Defendants did not breach such contract with Plaintiff.

### THIRD DEFENSE

31.     Defendants' conduct was reasonable at all times.

### FOURTH DEFENSE

32.     Plaintiff's claims are barred because of the doctrines of waiver and/or estoppel.

### FIFTH DEFENSE

33.     Plaintiff breached any applicable contract.

## SIXTH DEFENSE

34.    Defendants fulfilled any alleged duty or obligations toward Plaintiff, including those obligations under any contract.

## SEVENTH DEFENSE

35.    Defendants' conduct conformed to industry standards.

## EIGHTH DEFENSE

36.    Plaintiff has failed to mitigate its damages.

## NINTH DEFENSE

37.    Defendants incorporate by reference all terms and conditions in any contract alleged between the parties.

## TENTH DEFENSE

38.    Defendant Conti is not a proper party to this lawsuit.

## ELEVENTH DEFENSE

39.    Defendant Conti was not a party to any alleged contract with Plaintiff.

## TWELFTH DEFENSE

40.    Plaintiff has failed to allege any facts sufficient to authorize this Court to pierce the corporate veil.

## THIRTEENTH DEFENSE

41.    Plaintiff's claims are barred by the statute of limitations.

## FOURTEENTH DEFENSE

42.    Plaintiff's claims are barred by its unclean hands.

## FIFTEENTH DEFENSE

43.    The loss claimed by the Plaintiff may be inaccurate and/or excessive.

## SIXTEENTH DEFENSE

44.     Plaintiff has made a claim for damages that are not covered by the insurance contract.

## SEVENTEENTH DEFENSE

45.     Plaintiff's claims are barred by the statute of frauds.

## EIGHTEENTH DEFENSE

46.     Plaintiff cannot maintain a breach of contract claim based upon its own breach, which occurred prior in time to any alleged breach by Defendants.

## NINETEENTH DEFENSE

47.     Plaintiff breached the implied warranty of good faith and fair dealing by acting unreasonably, which denied Defendants the benefits they had under the contract.

## TWENTIETH DEFENSE

48.     If Plaintiff were to succeed in its claims, Plaintiff would be unjustly enriched.

## TWENTY FIRST DEFENSE

49.     This Court lacks jurisdiction over the subject matter of this suit.

## TWENTY SECOND DEFENSE

50.     To the extent discovery may support the same, Defendants hereby incorporate all applicable affirmative defenses as outlined at F.R.C.P. 8(c)(1) as though same were set forth more fully herein at length.

## TWENTY THIRD DEFENSE

51.     Plaintiff lacks standing to assert the claims in the Complaint.

## TWENTY FOURTH DEFENSE

52.     Plaintiff's claims fail to comprise a justiciable case or controversy.

## TWENTY FIFTH DEFENSE

53.    Plaintiff has no damages.

## TWENTY SIXTH DEFENSE

54.    Plaintiff is barred from recovery of damages on account of its failure to perform conditions precedent, concurrent, or subsequent under any alleged contract.

## TWENTY SEVENTH DEFENSE

55.    Plaintiff's claims are moot.

## COUNTERCLAIMS AGAINST FOCUSMX AND THIRD PARTY CLAIMS AGAINST DAVE MOORE

Defendants Punch Innovations, LLC and Thomas Conti (collectively, "Defendants" or "Counterclaim Plaintiffs"), by and through their undersigned attorneys, for their Counterclaims and Third Party Claims, hereby allege as follows:

## PRELIMINARY STATEMENT

1.    Dave Moore ("Moore"), founder of plaintiff Apex Impact Marketing, Inc. d/b/a FocusMX ("FocusMX"), while working for defendant Punch Innovations, LLC ("Punch") as a technical support vendor servicing Punch clients, engaged in a series of disloyal, destructive acts, including the theft of business opportunities and conspiring with customers, such as Virtua Health, Inc. ("Virtua") and TruFusion, LLC ("TruFusion"), to systematically divert and misappropriate Punch's business, customers, and information to itself and its non-party partner SmithGifford. Moore engaged in this conduct in a malicious and calculated effort to cripple Punch – and its founder Thomas Conti -- and divert Punch's business and clients for the benefit of Moore, FocusMX and SmithGifford.

2.    Moore engaged in a grand scheme – which included concealing dealings with SmithGifford while working for Punch – all while ostensibly acting as a vendor of Punch, to

which FocusMX owed the utmost fiduciary duty. With a complete and utter disregard for its duties to Punch, FocusMX organized the termination of existing business relationships Punch had with clients, such as Virtua and TruFusion, the taking and using of confidential business information, the destruction of Punch e-mails and other information on Punch computers, and the transfer of Punch's ongoing and future business opportunities to itself and SmithGifford. Ultimately, FocusMX's actions caused substantial losses to Punch, resulting in hundreds of thousands or even millions of dollars in damages, including lost profits. Moreover, due to the wanton, willful and egregious nature of its conduct, FocusMX is liable to Punch for punitive damages.

## THE PARTIES

3.      Defendant-Counterclaim Plaintiff Punch Innovations, LLC ("Punch") is a corporation, duly organized and existing under the laws of the Commonwealth of Pennsylvania with an office currently located at 203 West Chestnut Street, 3rd Floor, West Chester, Pennsylvania 19380.

4.      Defendant-Counterclaim Plaintiff Thomas Conti ("Conti") is the Chief Executive Officer of Punch, who resides at 2528 Condor Drive, Audubon, Pennsylvania 19403.

5.      Plaintiff-Counterclaim Defendant Apex Impact Marketing, Inc. d/b/a FocusMX ("FocusMX") is a corporation duly organized and existing under the laws of the State of Delaware. It has an office located at 1720 Kendarbren Drive, Jamison, PA 18929.

6.      Third Party Defendant Dave Moore is the founder of FocusMX.[1]  On information and belief, Dave Moore resides in Doylestown, Pennsylvania.

---

[1] Notably, according to corporate formation documents filed with the Commonwealth of Pennsylvania, Ruth Moore – not her husband Dave Moore – is listed as the "owner" of FocusMX. On information and belief, because Ruth Moore is listed as the paper owner of FocusMX, the company has self-designated as a Women Owned Small Business ("WOSB") and Economically Disadvantaged Women Owned Small Business ("EDWOSB"), two specially

7.      Non-party SmithGifford, Inc. ("SmithGifford") is a corporation duly organized

and existing under the laws of the State of Virginia, with a corporate office located at 106 W.

Jefferson St., Falls Church, Virginia 22046.  SmithGifford, too, has a regional office located at

1720 Kendarbren Drive, Jamison, PA 18929 – the same address as FocusMX.

## JURISDICTION AND VENUE

8.      This Court has federal question jurisdiction over this action pursuant to 28 U.S.C.

§ 1331 because this action involves claims under a U.S. statute, 18 U.S.C. § 1030 and 18 U.S.C.

§ 1836.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a

substantial part of the events and/or omissions giving rise to the claims in this action occurred in

this judicial district and Defendants are subject to personal jurisdiction in this judicial district.

## FACTUAL BACKGROUND

### *Overview*

10.     Thomas Conti is a seasoned and experienced marketing and advertising agent

who has worked in the advertising world for 34 years.  On January 1, 2014, Conti formed Punch

Innovations, LLC.  Punch is a full-service marketing agency offering digital advertising,

branding, activation, and other services to companies in need of promotion.  Punch offers its

clients the full gambit of marketing and promotional services: activation campaigns, advertising,

branding, website development, social media campaigns, technology platforms, and much more.

---

designated statuses, pursuant to 13 CRF 127.200, which entitle entities to preferential treatment for purposes of
obtaining government contracts. In order for a business to avail itself of the benefits of WOSB and EDWOSB status,
a woman must, *inter alia*, "manage the day-to-day operations," "make long-term decisions for the business," and
"work at the business full-time during normal working hours."  On information and belief, Ruth Moore works part-
time as a bookkeeper for FocusMX.  Moreover, Dave Moore – not Ruth Moore – is actually the sole owner with full
day-to-day operational control of the business and he makes the long-term decisions for the business.  There are no
other FocusMX employees, female or male, who exercise managerial authority. On information and belief, Dave
Moore has intentionally and wrongfully filed FocusMX as a WOSB and EDWOSB designated entity.

11.     Punch assembled its clientele on the back of Conti's experience and industry relationships. With over three decades of experience in the marketing world, Conti had built up his reputation and standing in the industry, and was able to use his previous contacts, as well as his high-quality work and promotion, to create a book of business for Punch.

12.     Punch often engaged niche vendors. In the marketing industry, it is not uncommon for larger clients to hire multiple specialized marketing agencies or vendors to handle specific aspects of a company's advertising needs. In addition, advertising agencies, especially full-service ones, often engage smaller niche services firms or independent contractors to handle specific tasks. The smaller niche services firm typically acts as an agent of the advertising agency.

### *Dave Moore's Work for Punch*

13.     In or around April 2014, Dave Moore approached Tom Conti and offered his company, FocusMX, to provide technical services to Punch's clients on behalf of Punch. At that time, the parties executed a Mutual Non-Disclosure Agreement (the "NDA"). The NDA provided that neither party will disclose the confidential information of the other to third parties. The NDA additionally provided that each company would have its employees, to whom confidential information was disclosed, sign a similar such agreement.

14.     The NDA defined "Confidential Information" as "any information, technical data, or know-how including, but not limited to, that which relates to research, products, services, customers, markets, software, developments, inventions, processes, designs, drawings, engineering, marketing or finances, disclosed orally or in written or electronic form."

15.     In or around November, 2014, Punch retained FocusMX – and specifically its founder Dave Moore – as its technical resource provider to service the technical aspects (like

website enhancement) of Punch's projects for a number of Punch clients, including Virtua and SmithGifford.

16.    The services FocusMX was to provide were detailed in a "Scope of Work." When payment was remitted, FocusMX was paid directly by Punch, not Punch's clients. Moore/FocusMX were held out and represented as part of and as an agent of Punch. Dave Moore had a Punch e-mail address he used to communicate unencumbered and directly with Punch clients (dmoore@punchinnovations.com and dmoore@punchconnects.com). Moore was also provided with Punch business cards and a Punch telephone extension. Punch and Moore/FocusMX exercised an industry standard arrangement where Moore would act as Punch's representative to Punch clients.

17.    During its work for Punch, FocusMX (and Dave Moore) were provided direct access to Punch clients, often working on behalf of Punch on-site at the client's location or directly with the client's machines or equipment.

18.    In working for Punch, Moore and FocusMX were also able to access, and were privy to, Punch trade secrets and confidential information, including but not limited to, marketing strategies, customer information, client lists, prospective client lists, supplier lists, certain Punch contractual agreements, Punch's pricing structure and Punch marketing methodologies that had been developed over the years. Moore and FocusMX even had complete control over Punch's information technology infrastructure and servers, with unencumbered access to Punch's website, email accounts and digital files.

19.    Moore (and other FocusMX employees) would also work based on deadlines set by Punch and Tom Conti, and if necessary, Conti would direct the work of Moore and FocusMX to ensure it would comply with standards set by Punch's client.

20.  FocusMX and Dave Moore were paid directly by Punch.

21.  Up to and including 2016, Punch paid FocusMX a total of $328,371.70 for work FocusMX performed on behalf of Punch.  Prior to the instant litigation, neither FocusMX nor Dave Moore ever complained about billing, invoices, or payments.

22.  Due to the relationship FocusMX and Dave Moore had with Punch, FocusMX and Moore owed Punch an utmost duty of good faith and a duty of loyalty.

### *The Virtua Account*

23.  Up until it was wrongfully diverted by FocusMX, Tom Conti's longest tenured and largest client was Virtua Health, Inc. ("Virtua"), a large health care system in South Jersey. Conti has provided Virtua with a full gambit of advertising and marketing services since approximately 2004.  Over the years, Conti has worked to cultivate, maintain and expand his relationship with Virtua.

24.  In or around September 2015, Punch pitched Virtua for a website enhancement project; Punch won the assignment.  As part of its pitch to Virtua, Punch agreed to provide technical services to Virtua, including website maintenance and enhancement.  Punch engaged FocusMX and Dave Moore for this portion of the project.

25.  Punch and Virtua executed a Services Agreement Between Virtua Health, Inc. and Punch Innovations, LLC on September 8, 2015, for specific services including website enhancement, strategic planning, social media outreach and content marketing.  For this project, like all Punch projects, Punch would submit Statements of Work ("SOWs") directly to Virtua. Virtua would then review the SOWs and pay Punch for work performed. Thereafter, Punch would pay its vendors and service firms – like FocusMX.

26.     On information and belief, throughout 2016, Dave Moore, while working on behalf of Punch, solicited Virtua and encouraged Virtua to terminate its relationship with Punch and to instead work with FocusMX (and its new partner, SmithGifford).

27.     To Conti and Punch's great surprise, in December 2016, Virtua chose to terminate its contractual relationship with Punch.  Conti later learned that Virtua went exclusively to FocusMX and SmithGifford for its marketing needs.

28.     Before leaving for FocusMX and SmithGifford, the Virtua account had been generating approximately $435,000 annually for Punch.  That amount was expected to grow exponentially in the future.

### *Dave Moore and FocusMX Partner with SmithGifford*

29.     On or about August 14, 2016, Dave Moore informed Tom Conti that FocusMX received a significant investment from a full-service marketing agency. On information and belief, the investment was from SmithGifford, a competitor of Punch who, like Punch, provides a full array of marketing services to consumer based advertisers.  Following this investment, FocusMX and SmithGifford formed a partnership (the "FocusMX-SmithGifford Partnership").

30.     Today, FocusMX and SmithGifford share the same address, and telephone number.  On information and belief, they also both share the same Director of Technology, David Lowe.

31.     On information and belief, prior to the formation of the FocusMX-SmithGifford Partnership, FocusMX through Dave Moore, told Matt Smith and/or Trisha Pierce of SmithGifford (the latter being the president of SmithGifford), that Moore (and FocusMX) had been servicing Punch clients, such as Virtua, and Moore had been soliciting and encouraging those clients to leave Punch.

32.    Moreover, on information and belief, Moore told Matt Smith and/or Trisha Pierce that Moore could convince Virtua and other Punch clients to leave Punch for the newly formed FocusMX-SmithGifford Partnership.

33.    Moore and FocusMX had access to Punch's clients and nonpublic information only because they were Punch's agent performing services on behalf of Punch.

34.    Because Moore and FocusMX worked for Punch, Moore knew how he could use Punch's information to his advantage: for instance, Moore knew Punch's rates, so he promised Virtua and other clients that he could pitch lower rates at the newly established FocusMX-SmithGifford Partnership; Moore also knew Punch's turnaround time on projects, so he promised quicker turnaround times to clients.

35.    On information and belief, while working on behalf of Punch, Moore solicited Punch clients to leave Punch and to join the FocusMX-SmithGifford Partnership.  When Moore contacted Punch customers and clients, he utilized Punch trade secrets and proprietary information – such as Punch customer lists, services firms lists, pricing information and marketing strategies – to solicit Punch's clients.

36.    On information and belief, while Moore worked for Punch, he disparaged Punch and Tom Conti to Virtua and other Punch clients, in an effort to convince them to leave Punch and join the FocusMX-SmithGifford Partnership.

37.    When the FocusMX-SmithGifford Partnership was formed in August 2016, FocusMX was still servicing Punch clients, and pursuant to outstanding SOWs, was to continue to provide IT services to Punch clients through the end of 2016.

38.    On August 14, 2016, when Punch learned that FocusMX was working with a Punch competitor, Conti told Dave Moore that he viewed the FocusMX-SmithGifford

Partnership as a competitive threat and Conti would no longer refer work to FocusMX. Unbeknownst to Conti, at that time, Moore had already engaged in a series of disloyal, destructive acts against Punch, and laid the groundwork to steal Punch's business opportunities from existing clients for the benefit of FocusMX and the FocusMX-SmithGifford Partnership.

### *Investigation Uncovers Dave Moore's Disloyal, Destructive Conduct*

39.     Given that Virtua was a client of Tom Conti for more than a decade, when Virtua terminated its contractual relationship with Punch in December 2016, Punch conducted an internal investigation.

40.     As part of its investigation, Punch began looking into Dave Moore's conduct while he worked on behalf of Punch.

41.     A review of Moore's Punch email account uncovered that Moore deleted his entire inbox around the time he stopped working for Punch. However, Moore neglected to delete the sent mail in his Outbox, which uncovered the tip of the iceberg of Moore's disloyal conduct.

42.     While working as an agent of Punch, Dave Moore:

     (a)    on his Punch email address, emailed with Virtua Director of Digital Marketing, John Martino, and set up lunch meetings in an effort to encourage Martino to terminate Virtua's relationship with Punch and in an effort to bring Virtua's business to FocusMX and the FocusMX-SmithGifford Partnership. These meetings took place in November 2016, one month before Virtua terminated its relationship with Punch;

     (b)    on his Punch email address, emailed with Michael Schiffman, the Technology Director of TruFusion, another Punch client, about a new TruFusion project that Moore and FocusMX intended to submit a bid on. On information and belief, Moore also encouraged TruFusion to leave Punch and join FocusMX and the FocusMX-SmithGifford Partnership;

     (c)    on his Punch email address, emailed with Frances Reimers, Director of Corporate Visibility for PCI, another Punch client, regarding a PCI project that Moore tried to refer to FocusMX and the FocusMX-SmithGifford Partnership;

(d)    in or around June 2016, repeatedly deleted and froze the Rack Space server that hosted Punch's e-mail and website services, which FocusMX managed and maintained. On more than one occasion, Moore intentionally disrupted the Rack Space (a third-party ISP), which temporarily froze Punch's email and website capabilities, inhibiting Punch from conducting business from anywhere from a few minutes to a period of days; and

(e)    on information and belief, Moore was actively engaging and pitching all of Punch's clients with which he was engaged on behalf of Punch, and as Punch's agent, to leave Punch and join Moore with either FocusMX or the newly formed FocuxMX-SmithGifford Partnership.

43.    In addition, on or about December 15, 2016, in a conversation between Tom Conti and John Martino of Virtua following Virtua's termination of the relationship with Punch, Martino informed Conti that Virtua could get the work at "half the price" if it worked directly with FocusMX. Martino also informed Conti that Punch was "not a real company." On information and belief, these statements originated from Dave Moore, who disparaged Punch to Virtua, while acting as a Punch agent.

44.    Moreover, during that conversation, Martino implied that he knew how much Punch would charge for various services, and that he would rather work with FocusMX because they would allegedly charge less. On information and belief, Moore used his special relationship of confidence and trust with Punch to learn, among other things, Punch's strategies and pricing information, and Moore then used that information against Punch to FocusMX and Moore's advantage.

45.    In sum, Dave Moore while working as an agent of Punch, deceptively diverted at least five Punch clients (Virtua, TruFusion, PCI, Community Three and Full Measure Education) to FocusMX and/or the FocusMX-SmithGifford Partnership.

## FIRST CAUSE OF ACTION
### (Breach of Duty of Loyalty)
### (Against FocusMX and Moore)

46.     Counterclaim Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

47.     The aforementioned actions by FocuxMX and Moore constitute breaches of the common law fiduciary duty of loyalty which FocuxMX and Moore owed to Counterclaim Plaintiffs.

48.     As an agent and contractor of Counterclaim Plaintiffs, FocusMX and Moore owed Counterclaim Plaintiffs a duty of good faith and loyalty and was obligated to act in the best interests of Counterclaim Plaintiffs.

49.     Counterclaim Plaintiffs were entitled to place its trust and confidence in FocusMX and Moore and to expect FocusMX and Moore to act with the utmost good faith toward it in carrying on the business of Counterclaim Plaintiffs.

50.     Counterclaim Plaintiffs relied on FocusMX and Moore's loyalty and integrity and their faithful performance of their duties and responsibilities.

51.     FocusMX and Moore took advantage of Counterclaim Plaintiffs' faith in them by not performing their duties to Counterclaim Plaintiffs, by acting in conflict of interest, by engaging in business for their own account and in competition with the Counterclaim Plaintiffs, and by deceiving Counterclaim Plaintiffs so that, *inter alia*, Counterclaim Plaintiffs would not uncover their improper conduct.

52.     FocusMX and Moore knowingly and willingly breached their duty of loyalty to Counterclaim Plaintiffs by engaging in a scheme to deceive and defraud Counterclaim Plaintiffs, which involved diverting sales to the FocusMX-SmithGifford Partnership.

53.    FocusMX and Moore were fiduciaries of Counterclaim Plaintiffs while working for Counterclaim Plaintiffs, but acted inconsistently with their agency and trust by soliciting Counterclaim Plaintiffs' customers for themselves and the FocusMX-SmithGifford Partnership, and misappropriating Counterclaim Plaintiffs' property.

54.    FocusMX and Moore's breach of duty to Counterclaim Plaintiffs began when they were no longer acting consistent with the best interests of Counterclaim Plaintiffs.

55.    As a direct and proximate result of FocusMX and Moore's disloyalty to Counterclaim Plaintiffs and their breach of their duties, Counterclaim Plaintiffs have been harmed.

56.    Counterclaim Plaintiffs are entitled to disgorgement from FocusMX and Moore of the monies paid to them by Counterclaim Plaintiffs, including forfeiture of all wages and benefits paid to FocusMX and Moore by Counterclaim Plaintiffs after they breached their duties of loyalty, the exact amount to be determined at trial, but believed to be not less than $328,371.70.

57.    Counterclaim Plaintiffs are entitled to lost profits as a result of FocusMX and Moore's breaches of duty and any and all profits derived therefrom by either FocusMX and/or the FocusMX-SmithGifford Partnership, the exact amount to be determined at trial, but believed to be not less than $1,800,000.

58.    Counterclaim Plaintiffs are also entitled to disgorgement from FocusMX and Moore of the monies paid to them by Counterclaim Plaintiffs' clients, including forfeiture of all profits received by FocusMX and Moore from any and all of the Punch clients who were diverted by FocusMX and Moore while they were working as Punch's agent.

59.    Not only did Counterclaim Plaintiffs lose pecuniary profits when FocusMX made sales to Counterclaim Plaintiffs' customers, Counterclaim Plaintiff also lost their competitive

position during the period in which FocusMX and Moore surreptitiously diverted sales for their own benefit, while Counterclaim Plaintiffs rested upon the justifiable assumption that FocusMX and Moore's business dealings were for Punch's sole benefit.

60.     Due to the outrageous and fraudulent nature of FocusMX and Moore's conduct, Counterclaim Plaintiffs are further entitled to an award of punitive damages in an amount to be determined at trial, but not less than $1,000,000.

**SECOND CAUSE OF ACTION**
**(Tortious Interference with Business Relations)**
**(Against FocusMX and Moore)**

61.     Counterclaim Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

62.     Counterclaim Plaintiffs had a reasonable business expectancy and ongoing relationship with its customers and clients.

63.     FocusMX and Moore knew of Counterclaim Plaintiffs' business relationships and business expectancy from these customers and clients.  FocusMX and Moore even worked on behalf of Counterclaim Plaintiffs' directly servicing these customers and clients.

64.     FocusMX and Moore purposefully interfered with the expectancy by diverting existing and prospective accounts, and by doing so through the tortious and disloyal conduct alleged above. Specifically, FocusMX and Moore internationally interfered with, and prevented continuation of a business relationship with Punch clients, including but not limited to, Virtua.

65.     FocusMX and Moore's misconduct was intentional and outrageous and committed with the purpose of causing injury to or in reckless disregard of harm to Counterclaim Plaintiffs in order to serve FocusMX and Moore's interests.

66.    FocusMX and Moore lacked any privilege or justification for their interference, but were supposed to be acting as Punch's agent, solely on behalf of Punch.

67.    As a direct and proximate cause of FocusMX and Moore's improper conduct, Counterclaim Plaintiffs have suffered damages, including lost profits, the exact amount to be determined at trial, but believed to be not less than $1,800,000.

68.    In addition, Counterclaim Plaintiffs are entitled to an award of punitive damages against FocusMX and Moore in an amount to be determined at trial, but not less than $1,000,000.

### THIRD CAUSE OF ACTION
**(Tortious Interference with Contract)**
**(Against FocusMX and Moore)**

69.    Counterclaim Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

70.    Counterclaim Plaintiffs had existing contractual relationships with non-party clients and customers, including but not limited to, Virtua and TruFusion.

71.    FocusMX and Moore knew of Counterclaim Plaintiffs' contractual relationships and the existence of operable contracts between Counterclaim Plaintiffs and the non-party clients and customers, including but not limited to, Virtua and TruFusion. FocusMX and Moore even worked on behalf of Counterclaim Plaintiffs' directly servicing these customers and clients pursuant to those contracts.

72.    FocusMX and Moore purposefully interfered with the contractual relationships by diverting existing and prospective accounts. Specifically, FocusMX and Moore intentionally interfered with the contractual relationships between Counterclaim Plaintiff and its clients, including but not limited to, Virtua and TruFusion.

73.    FocusMX and Moore's misconduct was intentional and outrageous and committed with the purpose of causing injury to or in reckless disregard of harm to Counterclaim Plaintiffs in order to serve FocusMX and Moore's own interests.

74.    FocusMX and Moore lacked any privilege or justification for their interference.

75.    As a direct and proximate cause of FocusMX and Moore's improper conduct, Counterclaim Plaintiffs have suffered damages, including lost profits, the exact amount to be determined at trial, but believed to be not less than $1,800,000.

76.    In addition, Counterclaim Plaintiffs are entitled to an award of punitive damages against FocusMX and Moore in an amount to be determined at trial, but not less than $1,000,000.

### FOURTH CAUSE OF ACTION
**(Unfair Competition)**
**(Against FocusMX and Moore)**

77.    Counterclaim Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

78.    FocusMX and Moore's conduct as alleged herein constitutes unfair competition in that such conduct constitutes unlawful and unfair business acts and practices.

79.    FocusMX and Moore have and will continue to benefit monetarily from such conduct.

80.    As a direct and proximate result of FocusMX and Moore's conduct, Counterclaim Plaintiffs have suffered damages, including lost profits, the exact amount to be determined at trial, but believed to be not less than $1,800,000.

81.    In addition, Plaintiff is entitled to an award of punitive damages in an amount to be determined at trial, but not less than $1,000,000.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment)
### (Against FocusMX and Moore)

82.    Counterclaim Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

83.    Counterclaim Plaintiffs conferred benefits on FocusMX and Moore, including but not limited to projects wherein FocusMX and Moore received payments.

84.    Such payments would not have been received without Punch engaging FocusMX and/or Moore for such projects.  FocusMX and Moore wrongfully secured and/or received such benefits while at the same time diverting and interfering with existing accounts, diverting sales, using and distributing Punch's confidential information to Punch's detriment, and otherwise failing to act in Punch's best interests.

85.    As a result of such projects, FocusMX and Moore have become unjustly enriched at the expense of Punch by the amount Punch paid for such services.  Counterclaim Plaintiffs have suffered damages, including lost profits, the exact amount to be determined at trial, but believed to be not less than $1,800,000.

## SIXTH CAUSE OF ACTION
### (Violation of Pennsylvania Uniform Trade Secrets Act)
### (Against FocusMX and Moore)

86.    Counterclaim Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

87.    As set forth above, FocusMX and Moore were in the possession of valuable confidential and proprietary information and trade secrets concerning Counterclaim Plaintiffs' business, and such information and trade secrets are protected by the Pennsylvania Uniform Trade Secrets Act, 12 PA. C.S. §5301 et. seq. ("PUTSA").

88.     Specifically, FocusMX and Moore were in possession of, *inter alia*, Punch marketing strategies, customer information, client lists, prospective client lists, supplier lists, Punch's pricing structure and Punch marketing methodologies.

89.     FocusMX and Moore knew that the confidential and proprietary information and trade secrets were acquired under circumstances giving rise to a duty to maintain their secrecy and limit their use.

90.     At all relevant times, Counterclaim Plaintiffs made diligent and significant efforts to maintain the secrecy of its trade secret information, which were reasonable in the circumstances.  Such efforts included entering into confidentiality agreements and non-disclosure agreements with vendors and service firms.

91.     Upon information and belief, FocusMX and Moore have obtained confidential and proprietary information relating to Counterclaim Plaintiffs' clients, customers, processes and pricing through "improper means," as defined by the PUTSA.

92.     Upon information and belief, FocusMX and Moore have used and will continue to inevitably use, the confidential and proprietary information and trade secrets to FocusMX and Moore's personal benefit to the detriment of Counterclaim Plaintiffs.

93.     FocusMX and Moore's actions are willful, intentional, unprivileged, and malicious, thereby subjecting them to exemplary damages.

94.     As a direct and proximate result of FocusMX and Moore's conduct, Counterclaim Plaintiffs have suffered damages, including lost profits, exemplary damages, attorneys' fees, expenses and costs, pursuant to 12 Pa. C.S. §5305.

## SEVENTH CAUSE OF ACTION
### (Violation of Defend Trade Secrets Act, 18 U.S.C. §1836)
### (Against FocusMX and Moore)

95.     Counterclaim Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

96.     As set forth above, FocusMX and Moore were in the possession of valuable confidential and proprietary information and trade secrets concerning Counterclaim Plaintiffs' business, and such information and trade secrets are protected by the Defend Trade Secrets Act, 18 U.S.C. §1836.

97.     Specifically, FocusMX and Moore were in possession of, *inter alia*, Punch marketing strategies, customer information, client lists, prospective client lists, supplier lists, Punch's pricing structure and Punch marketing methodologies.

98.     FocusMX and Moore knew that the confidential and proprietary information and trade secrets were acquired under circumstances giving rise to a duty to maintain their secrecy and limit their use.

99.     At all relevant times, Counterclaim Plaintiffs made diligent and significant efforts to maintain the secrecy of its trade secret information, which were reasonable in the circumstances.  Such efforts included entering into confidentiality agreements and non-disclosure agreements with vendors and service firms.

100.     Upon information and belief, FocusMX and Moore have obtained confidential and proprietary information relating to Counterclaim Plaintiffs' clients, customers, processes and pricing through "improper means," as defined by the DTSA.

101.    Upon information and belief, FocusMX and Moore have used and will continue to inevitably use, the confidential and proprietary information and trade secrets to FocusMX and Moore's personal benefit to the detriment of Counterclaim Plaintiffs.

102.    FocusMX and Moore's actions are willful, intentional, unprivileged, and malicious, thereby subjecting them to exemplary damages.

103.    As a direct and proximate result of FocusMX and Moore's conduct, Counterclaim Plaintiffs have suffered damages, including lost profits, exemplary damages, attorneys' fees, expenses and costs, pursuant to 18 U.S.C. § 1836.

## EIGHTH CAUSE OF ACTION
### (Violation of Computer Fraud and Abuse Act, 18 U.S.C. §1030)
### (Against FocusMX and Moore)

104.    Counterclaim Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

105.    In or around June 2016, FocusMX and Moore violated the Computer Fraud and Abuse Act ("CFAA"), by knowingly, and with an intent to defraud Punch, accessing Punch's computer systems and email accounts, and deleting and disrupting the Rack Space server in an intentional attempt to disrupt and cause damage to Punch, its email accounts, its website and its server.  Moreover, in or around that time, FocusMX and Moore violated the CFAA, by knowingly and with an intent to defraud Punch, accessing Punch's computer and email accounts and deleting emails from the Punch server.

106.    Punch computer systems are "protected" computers within the meaning of the CFAA because they are used to conduct interstate commerce and communication.  Specifically, Punch conducted business through its computer systems with clients throughout the United States.

107.     FocusMX and Moore exceeded their authority, and/or acted without authorization, in that, *inter alia,* they breached and were acting in violation of their duties of loyalty and good faith, by competing and working on behalf of FocusMX and/or the FocusMX-SmithGifford Partnership, while deceiving Counterclaim Plaintiffs into believing that they were a good faith representative of the Counterclaim Plaintiffs, and they accessed the protected computers for this reason and in furtherance of their disloyal and fraudulent scheme.

108.     As a direct and proximate result of FocusMX and Moore's violation of the CFAA, Counterclaim Plaintiffs have sustained more than $5,000 in losses and/or damages, including, without limitation, the costs: of detecting and fixing the deletion and interruption of the Rack Space; of assessing and reviewing the emails deleted by FocusMX and Moore and attempting to recover lost or deleted files or emails; and of the potential lost profits and business from the deletion and interruption of the Rack Space.

### NINTH CAUSE OF ACTION
#### (Breach of Non-Disclosure Agreement)
#### (Against FocusMX and Moore)

109.     Counterclaim Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

110.     The parties hereto entered into a valid and enforceable Non-Disclosure Agreement, dated April 9, 2014.  Pursuant to the Agreement, FocusMX and Moore were obligated to protect Punch's proprietary and confidential information from disclosure.

111.     Counterclaim Plaintiffs substantially performed its obligations under the Non-Disclosure Agreement.

112.     FocusMX and Moore have improperly disclosed and used Punch's information, as described in more detail herein, in direct breach of the Non-Disclosure Agreement.

113.    The aforementioned disclosures of Punch information have caused harm to Counterclaim Plaintiffs, the exact amount to be determined at trial but believed to be not less than $1,800,000.

WHEREFORE, Counterclaim Plaintiffs demand judgment against FocusMX and Moore as follows:

i.    On the First Cause of Action in an amount to be determined at trial, but believed to be not less than $1,800,000, plus punitive damages;

ii.    On the Second Cause of Action in an amount to be determined at trial, but believed to be not less than $1,800,000, plus punitive damages;

iii.    On the Third Cause of Action in an amount to be determined at trial, but believed to be not less than $1,800,000, plus punitive damages;

iv.    On the Fourth Cause of Action in an amount to be determined at trial, but believed to be not less than $1,800,000, plus punitive damages;

v.    On the Fifth Cause of Action in an amount to be determined at trial, but believed to be not less than $1,800,000, and for attorneys' fees, costs, and disbursements;

vi.    On the Sixth Cause of Action in an amount to be determined at trial, but believed to be not less than $1,800,000, and for attorneys' fees, costs, and disbursements;

vii.    On the Seventh Cause of Action in an amount to be determined at trial, but believed to be not less than $1,800,000, and for attorneys' fees, costs, and disbursements;

viii.    On the Eighth Cause of Action in an amount to be determined at trial, but believed to be not less than $5,000;

ix.    On the Ninth Cause of Action in an amount to be determined at trial, but believed

to be not less than $1,800,000; and

    x.    Such other and further relief as this Court deems just and proper.


Dated: <u>August 9, 2017</u>

                        Respectfully submitted,

                        THOMAS, THOMAS & HAFER, LLP

By: _____
                        Monica E. O'Neill, Esquire
                        Four Penn Center 1600
                        1600 JFK Blvd., Suite 620
                        Philadelphia, PA 19103
                        Telephone: (215) 564-2928
                        Facsimile: (215) 564-3281


                        MOSES & SINGER LLP

By: _____
                        John V. Baranello, Esquire (*Pro Hac Vice*)
                        Daniel A. Hoffman, Esquire (*Pro Hac Vice*)
                        405 Lexington Avenue
                        New York, NY  10174
                        Telephone: (212) 554-7800
                        Facsimile: (212) 554-7700

                        *Attorneys for Defendants/Counterclaim Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Monica E. O'Neill, Esquire, of the law firm of Thomas, Thomas & Hafer, LLP, hereby certify that a true correct copy of the foregoing document was served upon all counsel of record by electronic filing with the court on this date and on Dave Moore by First Class Mail on this date (and by process server, if service is not waived):

Harry J. Giacometti, Esquire
Flaster Greenberg, P.C.
1835 Market Street, Suite 1050
Philadelphia, PA 19103
E-Mail: harry.giacometti@flastergreenberg.com
Counsel for Plaintiff

Dave Moore
1720 Kendarbren Drive
Jamison, PA 18929
Third Party Defendant

Respectfully submitted,

**THOMAS, THOMAS & HAFER, LLP**

Date:  August 9, 2017

By: _Monica E. O'Neill_
Monica E. O'Neil, Esquire
Four Penn Center 1600
1600 JFK Blvd., Suite 620
Philadelphia, PA 19103
Telephone: (215) 564-2928
Facsimile: (215) 564-3281

**MOSES & SINGER LLP**

By: _/s/_
John V. Baranello, Esquire
Daniel A. Hoffman, Esquire
405 Lexington Avenue
New York, NY 10174
Telephone: (212) 554-7800
Facsimile: (212) 554-7700
*Attorneys for Defendants/Counterclaim Plaintiffs*